IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **MICHELLE KAMPER,**<br><br>Plaintiff,<br><br>v.<br><br>**THE HARTFORD,**<br><br>Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:17-cv-00101-JNP-PMW<br><br>**District Judge Jill N. Parrish**<br><br>**Chief Magistrate Judge Paul M. Warner** |

District Judge Jill N. Parrish referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636 (b)(1)(B).[1] Before the court are Plaintiff's Motion for Decision on the Administrative Record ("Plaintiff's Motion"),[2] and Hartford's Motion for Summary Judgment on ERISA Claim ("Defendant's Motion").[3] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f). For the reasons set forth below, the court recommends that the Defendant's Motion be granted, and the Plaintiff's Motion be denied.

## BACKGROUND

Plaintiff Michelle Kamper ("Plaintiff" or "Ms. Kamper") is a former employee of Intermountain Health Care, Inc. ("IHC"), and a participant in the Group Long Term Disability

---

[1] *See* docket no. 24.
[2] *See* docket no. 17.
[3] *See* docket no. 22.

Plan for Employees of Intermountain Healthcare, Inc. (the "Plan"). The Plan is funded by an insurance policy issued to IHC by the Defendant Hartford Life and Accident Insurance Company ("Defendant" or "Hartford").[4] Hartford is the claim administrator responsible for the determination of long term disability ("LTD") claims under the Plan.[5] The Plan has delegated to Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."[6]

The Plan requires a claimant to submit proof of loss showing that the claimant is disabled under the Plan's terms and conditions.[7] The payment of LTD benefits will end on "the date [a claimant is] no longer Disabled" under the Plan's terms.[8] The Plan defines disability or disabled as:

> You are prevented from performing one or more of the Essential Duties of:
> 
> 1) Your Occupation during the Elimination Period;
> 
> 2) Your Occupation for the 12 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-Disability Earnings; and
> 
> 3) after that, Any Occupation.[9]

The Plan defines the term "Any Occupation" as "any occupation for which You are qualified by education, training or experience, and that has an earning potential greater than the lesser of: 1)

---

[4] *See* Administrative Record ("Kamper Rec.") docket no. 25 at 7, 32.
[5] *See* Kamper Rec. at 32.
[6] *Id.* at 32, 34.
[7] *See id.* at 18.
[8] *Id.* at 15.
[9] *Id.* at 22.

2

the product of Your Indexed Pre-disability Earnings and the Initial Benefit Period Percentage; or 2) the Maximum Monthly Benefit."[10]

### I. Ms. Kamper's Initial Application and Approval for LTD Benefits

Ms. Kamper submitted a claim for LTD benefits under the Plan. Hartford interviewed Ms. Kamper by telephone about her claim.[11] Kamper reported back and neck pain, with pain going down her legs, and some numbness in her arms.[12] After review of the medical records, Hartford approved the payment of LTD benefits to Kamper, and notified Kamper of its decision via a letter dated December 26, 2013.[13] Hartford informed Kamper that the Any Occupation disability definition would take effect on February 3, 2015.[14] The letter stated that payment of the LTD benefits would continue "provided [she] remain[ed] eligible for benefits under the terms of the Policy."[15]

### II. Hartford's Determination that Ms. Kamper Did Not Meet the Any Occupation Disability Definition for Continued Benefits

On August 14, 2014, Hartford sent a follow-up regarding the beginning of its investigation into whether she would continue to be eligible for LTD benefits.[16] The letter stated that "[e]ffective 2/3/15 you must be considered Disabled as outlined in the Any Occupation portion of the above definition in order to continue to be eligible for LTD benefits."[17] The letter

---

[10] *Id.*
[11] *See id.* at 94-95.
[12] *See id.*
[13] *See id.* at 148-50.
[14] *See id.* at 149.
[15] *Id.* at 148.
[16] *See id.* at 134-36.
[17] *Id.* at 135.

also requested updated information from Kamper, and noted that it had requested medical records from her primary treating physician, Dr. Miller.[18]

As part of its investigation, Hartford also requested medical records from Dr. Major, a back surgeon that Kamper had seen in December 2013.[19] However, on October 24, 2014, Hartford "[r]eceived notice that from [Dr. Major] there are no records to send."[20]

Hartford already had in its files a report dated February 19, 2014, prepared by Dr. Jeremiah Stubbs, who is Board Certified in Occupational Medicine and Family Medicine.[21] This report was prepared by reviewing the medical records "from and Occupational medicine perspective."[22] Dr. Stubbs concluded that "there are no apparent obstacles to performance of the upper extremity functions of sedentary work based on Dr. Major's exam."[23] Nevertheless, Hartford noted that an Attending Physician Statement from Dr. Miller "provides less functionality" for Kamper, and that it needed additional records from Dr. Miller to make its decision.[24] Hartford received and reviewed updated medical records it received from Dr. Miller, but concluded that Kamper's "level of occupational functionality" was still "unclear."[25]

After discussing the medical evidence at a roundtable, Hartford decided to refer the file for review by a Medical Case Manager ("MCM"), an on-staff nurse, to determine if the medical

---

[18] *See id.*
[19] *See id.* at 73-74, 75.
[20] *Id.* at 73.
[21] *See id.* at 548-54.
[22] *Id.* at 548.
[23] *Id.* at 552.
[24] *Id.* at 073.
[25] *Id.* at 072.

4

records supported any change in functionality from Dr. Stubbs' report.[26] The MCM concluded that the medical records did "not appear to provide any contradictory clinical information that may impact the Peer Reviewer's conclusion."[27] Hartford then referred the file for preparation of an Employability Analysis Report ("EAR") "to determine if [Kamper] would continue to meet the definition of disability when it change[d] on 2/3/2015."[28] In preparing the EAR, Hartford used the Occupational Access System ("OASYS") to cross-reference Kamper's qualifications profile with "occupations classified by the U.S. Department of Labor in the 1991 Dictionary of Occupational Titles (DOT)."[29] Kamper's functional capabilities were based on the restrictions and limitations in Dr. Stubbs' peer review report and the MCM's review.[30] The EAR identified three occupations within Kamper's capabilities, as well as three alternative occupations based on a Labor Market Survey of alternate nursing positions.[31]

Hartford concluded that Kamper no longer met the Plan's definition of disability after its change to the Any Occupation definition. On December 22, 2014, Hartford issued its claim determination and informed Kamper of her appeal rights.[32]

### III.  Ms. Kamper's Appeal

Ms. Kamper submitted a notice of appeal dated June 4, 2015, with medical records and statements of Dr. Miller about his opinion concerning Ms. Kamper's functionality.[33] Additional

---

[26] *See id.*
[27] *Id.* at 71.
[28] *Id.* at 70.
[29] *Id.* at 271.
[30] *See id.*
[31] *See id.* at 273-74, 275-91.
[32] *See id.* at 112-16.
[33] *See id.* at 244-70.

medical records were submitted on June 9, 2015,[34] and July 28, 2015.[35] The Hartford Appeal Specialist (the "Appeal Specialist") assigned to Ms. Kamper's appeal indicated that she would refer the file for an independent review due to the submission of "[a]dditional medical information."[36] On August 12, 2015, Hartford referred the claim to a third-party vendor, Professional Disabilities Associates, LLC ("PDA"), for an independent peer review.[37] Hartford asked that the peer reviewer contact Ms. Kamper's treating physicians to discuss Kamper's "current abilities, restrictions and limitations."[38]

PDA assigned the peer review to Dr. Tatyana Gitlevich.[39] Dr. Gitlevich provided a medical file review report dated August 25, 2015.[40] Dr. Gitlevich reported that she spoke with Dr. DeWitt, Ms. Kamper's Neurologist, on August 21, 2015, and with Dr. Miller on August 24, 2015.[41] Dr. Miller told Dr. Gitlevich that his office was not equipped to perform an evaluation of Ms. Kamper's functionality, and stated that his statements were "based on [Ms. Kamper's] self-report only."[42] Dr. Gitlevich concluded that Ms. Kamper "has a capacity to work at a sedentary level with accommodations," and "based on the MRI and EMG results [Ms. Kamper] does not require surgical intervention."[43] Dr. Gitlevich addressed Ms. Kamper's subjective complaints of pain, but concluded that her self-reported headaches and cognitive deficits were inconsistent with

---

[34] *See id.* at 226-43.
[35] *See id.* at 109.
[36] *Id.* at 60.
[37] *See id.* at 219-20.
[38] *Id.* at 219.
[39] *See id.* at 213.
[40] *See id.* at 206-13.
[41] *See id.* at 207.
[42] *Id.*
[43] *Id.*

the medical evidence.[44] Dr. Gitlevich did assign functional restrictions and limitations due to Ms. Kamper's back condition and pain complaints.[45]

The Appeal Specialist noted Dr. Gitlevich's recommendation that repetitive movements should be avoided "which potentially may aggravate [Ms. Kamper's] pain."[46] The Appeal Specialist also noted Dr. Gitlevich's finding that Ms. Kamper was capable of light work, except during exacerbation of pain when she could perform sedentary work.[47] Nevertheless, the record indicates that the Appeal Specialist "rel[ied] on the lesser of the identified function of sedentary" in making the appeal determination.[48] The Appeal Specialist concluded that the original EAR had "identified several sedentary level occupations that [Ms. Kamper] is capable and qualified to perform."[49] On August 28, 2015, the Appeal Specialist issued the appeal determination, denying Ms. Kamper's appeal.[50]

Ms. Kamper contends that Hartford improperly denied her claim for LTD benefits and seeks relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 (a)(1)(B).

## LEGAL STANDARD

In an ERISA case "where both parties moved for summary judgment and stipulated that no trial is necessary, 'summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility of benefits is decided solely on the administrative record, and the

---

[44] *See id.* at 212.
[45] *See id.* at 211, 213.
[46] *Id.* at 56.
[47] *See id.*
[48] *Id.*
[49] *Id.*
[50] *See id.* at 99-104.

7

non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010). When "a denial of benefits challenged under § 1132(a)(1)(B) [it] is to be reviewed under a *de novo* standard." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, where, as in this case, "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" the denial of benefits will be reviewed under an abuse of discretion standard. *Id.*

"[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (second alteration in original) (quotation marks and citation omitted). The Tenth Circuit has "crafted a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but [will] decrease the level of deference given in proportion to the seriousness of the conflict.'" *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citations, quotation marks, and alterations omitted). Under this approach, "where the administrator has taken active steps to reduce potential bias and to promote accuracy," this factor will "prove less important (perhaps to the vanishing point)." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008).

Here, Ms. Kamper notes the standard for when a plan administrator has a conflict of interest in the Plaintiff's Motion,[51] but does not cite to any evidence in the record to demonstrate the seriousness of Hartford's conflict, or argue that the court should weigh this factor heavily in this case. Hartford notes that it "'mitigated the potential for undue influence of the conflict of

---

[51] *See* docket no. 17 at 12.

interest by retaining independent'" Board Certified physicians, Dr. Stubbs and Dr. Gitlevich, "to review the medical records."[52]

Based on the foregoing, the court will apply an arbitrary and capricious standard to its review of Hartford's determination not to approve Ms. Kamper for LTD benefits, and will give little weight to the conflict of interest factor.

Under the arbitrary and capricious standard, the court "will uphold the decision of the plan administrator 'so long as it is predicated on a reasoned basis,' and 'there is no requirement that the basis relied upon be the only logical one or even the superlative one.'" *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1134 (10th Cir. 2011) (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir.1999)). "Accordingly, [the court's] review inquires whether the administrator's decision resides 'somewhere on a continuum of reasonableness—even if on the low end.'" *Adamson v. Unum Life Ins. Co. Of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (quoting *Kimber*, 196 F.3d at 1098).

"A lack of substantial evidence often indicates an arbitrary and capricious decision . . . . Substantial evidence means more than a scintilla, of course, yet less than a preponderance. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole." *Id.* (citations omitted).

### DISCUSSION

Ms. Kamper argues that Hartford's claim determination was arbitrary and capricious because (1) Ms. Kamper's medical conditions render her totally disabled,[53] (2) the EAR failed to

---

[52] Docket no. 23 (quoting *Matthews v. Hartford Life & Accident Ins. Co.*, No. 1:14-CV-94 TS, 2015 WL 3683390, at *3 (D. Utah June 12, 2015)).
[53] *See* docket no. 17 at 14-18.

consider restrictions on repetitive movements and the unpredictable frequency of Ms. Kamper's pain exacerbations,[54] (3) Hartford improperly relied on Dr. Gitlevich as a vocational expert,[55] and, (4) Hartford violated Ms. Kamper's doctor-patient privilege.[56] For its part, Hartford argues that it reasonably determined that Ms. Kamper was not disabled under the Any Occupation disability definition, and that this determination is supported by substantial evidence on the record. The court will address each of these arguments in turn.

### I. Ms. Kampers Diagnoses Alone are Insufficient to Meet the Plan's Definition of Disability

Ms. Kamper argues that she suffers from "severe impairments that cause significant totally disabling limitations" and therefore Hartford's determination that she did not meet the Any Occupation disability definition and was no longer eligible for LTD payments was arbitrary and capricious.[57] In support of this argument, Ms. Kamper extensively recites her medical diagnoses, including determinations about those diagnoses made by Dr. Gitlevich.[58] Although Ms. Kamper appears to concede that diagnoses alone do not equate to functional impairment under the Plan, she asks the court to accept that "common sense alone should apprise all reasonable persons to the fact that a person who cannot engage in 'repetitive activities' has a severe disabling functional impairment that meets the terms of the Plan."[59]

---

[54] *See id* at 15-16.
[55] *See id.* at 18-19.
[56] *See id.* at 19-23.
[57] *See id.* at 14-15.
[58] *See id.*
[59] Docket no. 27 at 20.

Medical diagnoses alone are insufficient to meet the Any Occupation disability definition under the Plan, which is based on whether Ms. Kamper is "prevented from performing one or more of the Essential Duties of . . . any occupation for which [she is] qualified by education, training or experience."[60] Ms. Kamper's argument is essentially an invitation for the court to reweigh the medical evidence to decide whether Hartford's determination of her eligibility under the Any Occupation disability definition was correct. The court will not do so under the arbitrary and capricious standard of review. Accordingly, the court rejects this argument.

## II.     Alleged Shortcomings of the EAR

Ms. Kamper argues that Hartford's determination is arbitrary and capricious because it improperly relied the EAR prepared in December of 2014. Ms. Kamper alleges that this EAR fails to take into consideration Dr. Gitlevich's discussion of restrictions on repetitive movements and the unpredictability of her exacerbations of acute pain. Ms. Kamper argues that Hartford's determination is therefore "untethered to the relevant and applicable evidence" and is consequently arbitrary and capricious.[61] On the contrary, the record indicates that Hartford did not ignore Dr. Gitlevich's findings. In its discussion of the appeal determination, Hartford specifically noted that Dr. Gitlevich reported that "due to the chronic neuromuscular pain she would not recommend repetitive movements, which may aggravate the pain."[62] The record demonstrates that the Appeal Specialist also noted that "[t]he frequency of acute exacerbations is

---

[60] *Id.* at 22.
[61] Docket no. 17 at 17.
[62] Kamper Rec. at 56.

11

unpredictable."[63] Moreover, the Appeal Specialist focused the vocational review on the lower sedentary level of function, even though Dr. Gitlevich found that Ms. Kamper was capable of light work.[64] The record indicates that the Appeal Specialist specifically considered whether a new EAR was necessary.[65] The Appeal Specialist noted that the EAR prepared in December 2014 identified several sedentary occupations within Ms. Kamper's capabilities.[66] Therefore, the court finds that Hartford did not act arbitrarily or capriciously in determining that those occupations continued to be valid for purposes of assessing Ms. Kamper's eligibility under the Any Occupation disability definition.

### III. Hartford's Alleged Reliance on Dr. Gitlevich as a Vocational Expert

Ms. Kamper argues that Hartford improperly relied on Dr. Gitlevich as a vocational expert, rather than as a medical expert. Ms. Kamper quotes Dr. Gitlevich's conclusion that Ms. Kamper "'has a capacity to work at a sedentary level with accommodations, i.e. ergonomic set up of the working place'" in support of her argument.[67] However, Ms. Kamper points to nothing in the record that suggests that Hartford relied on Dr. Gitlevich as a vocational, rather than medical, expert. In fact, the record demonstrates that Hartford did no such thing. In its referral to PDA, Hartford expressly stated that it was "not asking you to determine if the individual is Disabled, which is an insurance contract determination, or if s/he is able to work. We are asking you to provide an objective assessment of the individual's self-reported information."[68] The record indicates that Hartford sought an "objective assessment of [Ms. Kamper's] appropriate

---

[63] *Id.*
[64] *See id.*
[65] *See id.*
[66] *See id.* at 66.
[67] Docket no. 17 at 18 (quoting Kamper Rec. at 102).
[68] Kamper Rec. at 219.

restrictions/limitations based on" review of the medical evidence, including medical records, conversations with attending physicians, and Ms. Kamper's self-reported information.[69] Moreover, the record indicates that the Appeal Specialist "review[ed] . . . all the information including the review by Dr. Gitlevich" and the original EAR.[70] It was the Appeal Specialist who determined that Ms. Kamper did not meet the Any Occupation disability definition. The court finds that the record does not support the conclusion that Hartford relied on Dr. Gitlevich as a vocational expert.

### IV.     Hartford's Alleged Violation of Ms. Kamper's Doctor-Patient Privilege

Finally, Ms. Kamper contends that Hartford violated her doctor-patient privilege when Dr. Gitlevich spoke with her treating physicians, after she signed an updated authorization form with an addendum indicating that she did not give Hartford permission to have direct or ex parte communications them.[71] Although Ms. Kamper attempts to demonstrate that Hartford may have received the updated authorization earlier than indicated in the record, these arguments are unpersuasive, and ultimately a red herring. Ms. Kamper merely speculates that Hartford received the updated authorization earlier than August 25, 2015, and suggests that it is "probable" that Hartford received it on August 20, 2015.[72] However, there is no evidence in the record supporting Hartford's receipt of the updated authorization on that date.[73] To the contrary, the

---

[69] *Id.*
[70] *Id.* at 56.
[71] *See* docket no. 17 at 19-23.
[72] Docket no. 27 at 17.
[73] Ms. Kamper attached to her combined reply and response memorandum the declaration of Nikki Jones, assistant to Ms. Kamper's legal counsel, and a mail log, which assert that the updated authorization was mailed on August 19, 2015. *See* docket no. 27 at 25. The Tenth Circuit has "frequently, consistently, and unequivocally reiterated that, in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited

13

record demonstrates that Hartford received Ms. Kamper's updated authorization on August 25, 2015, after the record shows that Dr. Gitlevich spoke with Dr. DeWitt and Dr. Miller.[74] For this reason, the court finds that Hartford acted reasonably under the arbitrary and capricious standard in requesting PDA to have the peer reviewer contact Ms. Kamper's treating physicians.

V.     **Hartford's Determination is Supported by Substantial Evidence in the Record**

The court finds that Hartford based its determination of Ms. Kamper's continued eligibility for LTD benefits on substantial evidence, and its determination resides on the continuum of reasonableness—even if on the low end. Evidence within the record supports Hartford's initial and appeal determinations that Ms. Kamper did not meet the Any Occupation disability definition.

Dr. Stubbs report found that Ms. Kamper was capable of sedentary work subject to certain restrictions and limitations.[75] The MCM concluded that the medical records did "not appear to provide any contradictory clinical information that may impact the [Dr. Stubbs'] conclusion."[76] The EAR identified three occupations within Kamper's capabilities, as well as three alternative occupations based on a Labor Market Survey of alternate nursing positions, including several sedentary occupations.[77] Based on this evidence in the record, Hartford had a

---

to the administrative record." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010) (quotation marks and citations omitted). Accordingly, the court finds these documents inadmissible. However, even if they were admissible, they only serve to establish when Ms. Kamper's counsel sent the updated authorization, not when Hartford received it.
[74] *See* Kamper Rec. at 57 (entry dated 8/25/2015 01:12:34 p.m., indicating receipt of "Claim Form – Authoriztion."); *see also id.* at 214-15 (updated authorization).
[75] *See id.* at 552.
[76] *Id.* at 71.
[77] *See id.* at 273-74, 275-91.

reasonable basis for its initial determination that Ms. Kamper was no longer eligible for LTD payments under the Any Occupation disability definition.

      Dr. DeWitt found that Ms. Kamper did "not have 'anything solid to keep her off work'" and "agreed that [Ms. Kamper] has a capcity to work at a sedentary level with accommodations."[78] Dr. Miller told Dr. Gitlevich that his office was not equipped to perform an evaluation of Ms. Kamper's functionality, and stated that his statements were "based on [Ms. Kamper's] self-report only."[79] Dr. Gitlevich concluded that Kamper was capable of performing light duty work subject to certain restrictions and limitations, except during periods of paid exacerbation, when she would be capable of sedentary work with accommodations.[80] The Appeal Specialist relied on the lower sedentary level of function, and reviewed the sedentary occupations identified in the EAR, finding those occupations remained valid.[81] The additional evidence generated on appeal constitutes substantial evidence supporting Hartford's denial of Ms. Kamper's appeal.

      Accordingly, the court finds that Hartford did not act arbitrarily and capriciously when it made its determination regarding Ms. Kamper's continued eligibility for LTD benefits, because it based its decision on substantial evidence in the administrative record.

---

[78] *Id.* at 207.
[79] *Id.*
[80] *See id.* at 211-12.
[81] *See id.* at 56.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendant's Motion[82] be **GRANTED**, and Plaintiff's Motion[83] be **DENIED**.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to object may constitute waiver of objections upon subsequent review.

**IT IS SO ORDERED.**

DATED this 22nd day of February, 2018.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[82] Docket no. 22.
[83] Docket no. 17.